**MEDINA & MEDINA,**
**Plaintiff, Appellant,**

v.

**COUNTRY PRIDE FOODS LTD.,**
**Defendant, Appellee.**

**No. 89–1974.**

United States Court of Appeals,
First Circuit.

Heard May 5, 1990.

Decided April 17, 1990.

Luis E. Dubón, Jr., with whom Dubón & Dubón, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Salvador Antonetti, with whom Fiddler, González & Rodriguez, San Juan, P.R., was on brief, for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

TORRUELLA, Circuit Judge.

This dispute arises out of an exclusive distributorship agreement between appellant Medina & Medina, a distributor of meat and poultry products in Puerto Rico, and appellee Country Pride Foods, Ltd., a supplier of poultry products. The United States District Court for the District of Puerto Rico entered its original judgment in this case on October 7, 1986 and both parties appealed. On August 4, 1987, this Court certified the following question to the Supreme Court of Puerto Rico:

> Where there is a contract of indefinite time period, with price and credit terms left open to negotiation, and the parties negotiate in good faith but cannot reach an agreement as to price and credit, does Law 75 prohibit the supplier from unilaterally and completely withdrawing from the market, when the supplier makes no attempts to appropriate the dealer's good will or established clientele?

*Medina & Medina v. Country Pride Foods, Ltd.,* 825 F.2d 1, 3 (1st Cir.1987).

The Supreme Court of Puerto Rico answered as follows:

> ... Act No. 75 of June 24, 1964, does not bar the principal from totally withdrawing from the Puerto Rican market when his action is not aimed at reaping the good will or clientele established by the dealer and when such withdrawal—which constitutes just cause for terminating the relationship—is due to the fact that the parties have bargained in good faith but have not been able to reach an agreement as to price, credit or some other essential element of the dealership. In any case, said withdrawal must be preceded by a previous notice term which shall depend on the nature of the franchise, the characteristics of the dealer, and the nature of the pre-termination negotiations.

*Medina & Medina v. Country Pride, Ltd.,* reproduced in translation at 858 F.2d 817, 824 (1st Cir.1988).

The Puerto Rico Supreme Court mentioned the need to prevent "arbitrariness" from the withdrawing party; the allowance of time to "alleviate the effects of the break-up" and make arrangements for the future; and, when the withdrawal is due to differences as to an essential element of the contract, "the duration and intensity of the negotiations" are relevant to the determination of the proper length of the notice term. Other factors include the closeness of the relationship, the dependency of the dealer on the principal's product line, the "age of the ties broken by the dealer," market conditions, and the dealer's relationship with other suppliers and with the clientele. In essence, the determination is one of reasonableness under the circumstances.

After the certification was completed, this Court remanded the case to the district court to determine whether adequate pre-withdrawal notice was given to Medina. On June 28, 1989, the district court entered a new judgment dismissing Medina's complaint. Medina now appeals alleging that the district court erred in ruling that adequate pre-termination notice was given to Medina, and that consequently there was just cause for the termination of the distribution contract under Law 75. We disagree and affirm the district court.

## DISCUSSION

The purpose behind the requirement of reasonable termination notice is to give an opportunity for a dealer, such as Medina, to explore alternative sources of income, and to mitigate the economic impact that discontinuance of a particular line or product might cause. In this line, the duration and extent of the negotiations preceding the termination are crucial factors in determining reasonableness. Their tone and conditions may indicate that Medina was aware that the possibility of the relationship end-

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

ing was quite real. The district court determined that the dispute over an increase in prices began in June 1978 when Country Pride first demanded a higher price for poultry products that it supplied Medina. Negotiations were then actively pursued from October 24, 1978 to December 7, 1978, when Country Pride announced its decision to withdraw from the Puerto Rican market due to an impasse over price and payment terms.

According to the district court, the period of price negotiations amounted to one third of the total duration of the formal relationship between the parties, and six weeks prior to termination offers and counter-offers were still being exchanged. Implicit in these negotiations was that failure to reach an agreement would result in the termination of the relationship. In view of these findings, the district court correctly concluded that, under the circumstances, the period of time beginning June 1978 was sufficient to alert Medina that the business relationship was contingent upon reaching an agreement on the essential price element of the contract.

We agree with the district court analysis. Clearly, Medina had adequate notice. Moreover, armed with such notice Medina developed its own brand of poultry products and marketed them soon after the termination with Country Pride.

*Affirmed.*